IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KIMBERLY N. SANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 01-606 GMS |
| | ) | |
| CONTINENTAL CASUALTY CORPORATION, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

FILED
SEP 26 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## MEMORANDUM

### I. INTRODUCTION

On September 7, 2001, the plaintiff, Kimberly N. Sanderson ("Sanderson") filed the above-captioned action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Through this action, she sought to recover long-term disability benefits which she claimed were due under a policy of insurance issued by Continental Casualty Company ("Continental") to her employer, Rhodia, Inc. ("Rhodia"). On February 25, 2003, the court concluded that Continental's decision to deny Sanderson's disability benefits was arbitrary and capricious, and remanded the case to Continental for a more thorough and principled review of Sanderson's claim. Presently before the court are the parties' cross-motions for summary judgment. For the following reasons, the court will grant Sanderson's motion, in part, and deny Continental's motion.

### II. BACKGROUND

The facts and procedural history of this case are fully recited in *Sanderson v. Continental Cas. Corp.*, 279 F. Supp. 2d 466 (D. Del. 2003) (*Sanderson I*). The court will assume that the parties are familiar with the record and restate only those facts necessary to resolve the parties' cross-

motions for summary judgment.

Since November 1, 1999, Continental has insured Rhodia's long-term disability plan (the "Policy"). As previously discussed in *Sanderson I*, Continental administers the claims process and determines whether long-term disability benefits are payable under the Policy. The policy defines the terms "disabled" and "disability" as meaning the applicant "satisf[ies] the Occupation Qualifier or the Earning Qualifier as defined [therein]." (D.I. 87 Ex. 3, at A16.) The Policy defines "Occupation Qualifier" in relevant part as follows:

> "*Disability*" means that during the *Elimination Period* and the following 24 months [the Occupation Period], *Injury* or *Sickness* causes physical or mental impairment to such a degree or severity that *You* are:
>
> 1. continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
>
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training, or experience.

*Id.*[1] In order to prove that he or she is "disabled," an applicant is required to provide "[o]bjective medical findings which support [your disability]. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for [your] disabling conditions." (*Id.* at A23.) The applicant also must supply proof of "[t]he extent of *Your Disability* including restrictions and limitation which are preventing *You* from performing *Your Regular Occupation*." (*Id.*)

After an applicant exhausts his or her benefits during the Elimination Period and Occupation Period, he or she may receive benefits if he or she can continue to demonstrate a "disability." The

---

[1] The term "Earnings Qualifier" is not at issue in this case. Thus, there is no need for the court to further discuss this term.

term "disability," however, is defined differently for the period following the Occupation Period, the "Any Occupation Period." To be eligible for Any Occupation Period benefits, the policy provides:

> After the *Monthly Benefit* has been payable for 24 months [Occupation Period], *"Disability"* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1. continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
>
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

(*Id.* at A16.)

Sanderson applied for short-term disability benefits from Rhodia on February 28, 2000. *See Sanderson I*, 279 F. Supp. 2d at 469. Rhodia granted these benefits for the Elimination Period, beginning on March 1, 2000 and ending on August 31, 2000. *Id.* at 470. On June 14, 2000, Sanderson submitted an application for long-term disability, *i.e.* Occupation Period, benefits to Rhodia. *Id.* Rhodia completed its portion of the application and forwarded the materials to Continental. *Id.* After conducting its review, Continental, by way of letter dated September 7, 2000, informed Sanderson of its initial decision to deny her claim. *Id.* Sanderson appealed the decision, and on December 14, 2000, Sanderson received notice that Continental had again denied her claim. *Id.* By way of letter, dated January 19, 2001, Continental informed Sanderson that its Appeals Committee had determined to uphold the denial of benefits. *Id.* Sanderson then filed her claim with the court. As previously stated, the court determined that Continental's decision to deny benefits for the Occupation Period was arbitrary and capricious, and remanded the case to Continental for further review. Upon making its determination in *Sanderson I*, the court found that Continental

"impermissibly used evidence that supported the denial of Sanderson's benefits while ignoring, or failing to satisfactorily explain why it rejected evidence supporting an award of long-term disability benefits." 279 F. Supp. 2d at 477. The court held that remand was appropriate and directed Continental to: (1) address the findings of Sanderson's treating physicians instead of merely summarizing the information it had before it; (2) explain why it credited Dr. Eugene Truchelut's ("Dr. Truchelut") conclusions, while rejecting those of Sanderson's treating physicians, especially when Dr. Truchelut had not addressed a diagnosis of fibromyalgia;[2] and (3) address Sanderson's fibromyalgia, specifically her subjective complaints of pain and how they contradicted Dr. Truchelut's conclusions. *Id.* at 474-78. After further reviewing Sanderson's appeal, Continental, in a letter dated November 24, 2003, re-affirmed its prior decisions to deny Sanderson benefits, stating ". . . we do not see evidence of a functional loss that would have prevented Ms. Sanderson from continuously performing the substantial and material duties of her regular occupation beyond August 31, 2000." (D.I. 87 Ex. 36, at A218.) Sanderson and Continental then filed the cross-motions for summary judgment that are presently before the court. As of the date of this Memorandum, Sanderson has not received Occupation Period benefits or Any Occupation Period benefits.

### III. STANDARD OF REVIEW

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] Fibromyalgia syndrome is a common and chronic disorder characterized by widespread muscle pain, fatigue, and multiple tender points. National Institutes of Health, *Questions and Answers About Fibromyalgia*, at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm (June 2004). Fibromyalgia can cause significant pain and fatigue, and it can interfere with a person's ability to carry on daily activities. *Id.*

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Boyle v. County of Allegheny, Pennsylvania*, 139 F.3d 386, 392 (3d Cir. 1998). Thus, the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Boyle*, 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.*; *see also Assaf v. Fields*, 178 F.3d 170, 173-74 (3d Cir. 1999).

**IV.    DISCUSSION**

In *Sanderson I*, the court determined that the Policy at issue contained explicit language granting Continental discretion to determine eligibility for benefits. *Sanderson I*, 279 F. Supp. 2d at 472. The court also found that it was undisputed that Continental funds the plan it administers. *Id.* Applying the Third Circuit's analysis in *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir. 2000), the court concluded that a heightened arbitrary and capricious review was appropriate. *See id.* at 472-73. For the same reasons as stated in *Sanderson I*, the court will apply a heightened arbitrary and capricious standard to review Continental's decision, on remand, to deny Sanderson's benefits.

The question before the court is whether there is a genuine issue of material fact as to whether Continental acted arbitrarily and capriciously when it concluded that Sanderson was not totally disabled and, therefore, not eligible for long term benefits beyond August 31, 2000.

5

Sanderson asserts that Continental disregarded the court's remand order because Continental did not: (1) consider and weigh Sanderson's treating and examining physicians' opinions; (2) engage in a "thorough and fully-supported" discussion of why the conclusions of Sanderson's physicians should be rejected; and (3) address Sanderson's fibromyalgia and the impact it has on her functionality. Continental, on the other hand, contends that it conducted a thoughtful and reasoned review of Sanderson's claim and fully reviewed the Sanderson's medical record as directed by the court in its Remand Order. Continental further contends that its decision to deny Sanderson benefits was fully supported by the record evidence. For the following reasons, the court agrees with Sanderson and concludes that Continental's denial of benefits is arbitrary and capricious. The court further concludes that Sanderson is disabled, due to fibromyalgia, and that the appropriate remedy is to award her a retroactive reinstatement of benefits for the Occupation Period.

A. **Continental's November 24, 2003 Denial Letter**

As previously stated, in a letter dated November 24, 2003, Continental affirmed its previous decisions to deny long-term disability benefits to Sanderson and determined that Sanderson was not disabled within the meaning of the Policy. Rather than following the court's directive to conduct a thorough review, however, Continental again merely recited Sanderson's various doctors' examinations, and ultimately relied on Dr. Truchelut's December 10, 2000 assessment in making its determination – an assessment that did not address Sanderson's diagnosis of fibromyalgia. (D.I. 87 Ex. 36, at A217-18.) In particular, Continental's letter states:

> The medical consultant's review of all the available information presented concluded that Ms. Sanderson would be precluded from medium to heavy lifting, and that excessive use of the hands and wrists might be reasonable. In reviewing Ms. Sanderson's physical demands associated with her occupation, her occupation does not entail heavy or manual labor. While she does use a computer, telephone and

calculator and a good portion of her job consists of desk level work, there is no indication that she must excessively use her hands on a constant and repetitive basis. Her work schedule is described as self-paced. Ms Sanderson's condition appears to only moderately restrict her ability to perform her normal daily activities. Again, we are not disputing Ms. Sanderson's complaints and need for ongoing medical treatment, but we do not see evidence of a functional loss that would have prevented Ms. Sanderson from continuously performing the substantial and material duties of her regular occupation beyond August 31, 2000.

(*Id.*) Absent from the letter, remarkably, is any discussion by Continental regarding "why it credited certain evidence, or how it reconciled Dr. Truchelut's analysis with that of Sanderson's own treating and examining physicians." *Sanderson I*, 279 F. Supp. 2d at 475 (illustrating deficiencies in previous denial letters). Moreover, Continental did not engage in any analysis of Sanderson's fibromyalgia diagnoses. For example, while Continental refers to fibromyalgia in four places of the denial letter, the references to the term only recite Sanderson's physicians' diagnoses; the letter does not evaluate the impact of fibromyalgia on Sanderson.[3] (D.I. 87 Ex. 36, at A215-18.) Additionally, Continental does not explain, as directed by the court, why it discounted the impact of Sanderson's fibromyalgia, diagnosed by three of her treating physicians – Dr. Nancy G. Murphy, M.D. ("Dr. Murphy"), Dr. Alan Ken Matsumoto, M.D. ("Dr. Matsumoto"), and Dr. James H. Newman, M.D. ("Dr. Newman"). (*Id.*) While ERISA does not require special deference to treating physicians, Continental cannot reject reliable medical evidence without an objective basis for its conclusions.

---

[3] First, Continental cites to Dr. Murphy's conclusion that, "subsequent conditions and symptoms noted in the medical information presented include . . . 'fibromyalgia.'" (D.I. 87 Ex. 36, at A215.) Second, Continental notes, "[i]n October 2000, both Dr. Newman and Dr. Matsumoto have rendered a diagnosis to include 'fibromyalgia.'" (*Id.* at A216.) Third, Continental states, "Dr. Matsumoto's assessment concluded that Ms. Sanderson's musculoskeletal pain was not due to active inflammatory rheumatoid arthritis, but rather a 'fibromyalgia' type of presentation." (*Id.* at A217.) Fourth, Continental provides Dr. Newman's impression that, "due to the severity of Ms. Sanderson's complaints, it was reasonable that a second diagnosis of 'fibromyalgia' be considered." (*Id.*)

*See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.") Here, Continental has provided no "objective basis" for its conclusion.

The court also finds that Continental appears to be concerned with the lack of "objective evidence" suggesting the impact of a fibromyalgia diagnosis. (*Id.* at A217.) Continental's concern is misplaced, however, because "[t]he Third Circuit has found it arbitrary and capricious – not merely misguided – to require objective evidence of diseases [such as fibromyalgia] for which such evidence is simply unavailable." *Brown v. Continental Cas. Co.*, 348 F. Supp. 2d 358, 369 (E.D. Pa. 2004) (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 442-43 (3d Cir. 1997)). As the court noted in *Sanderson I*, there is no "objective laboratory marker" for fibromyalgia – that is, the illness is clinically diagnosed through the trigger or tender point test, a standardly accepted test in the practice of medicine. 279 F. Supp. 2d at 476 (citing Dr. Murphy's November 28, 2002 letter, which states "[t]here is no objective test, such as an x-ray or blood test to determine the level of pain a patient suffering from her [Sanderson's] condition [fibromyalgia] endures."); *see Scott v. Hartford Life & Accident Ins. Co.*, No. Civ.A. 03-3696, 2004 WL 1090994, at *5 (E.D. Pa. May 13, 2004) (discussing "pressure point" or "tender point" test as a means of diagnosing fibromyalgia). In *Sanderson I*, the court found that Drs. Matsumoto and Newman noted tender points which tended to confirm a diagnosis of fibromyalgia. 279 F. Supp. 2d at 476. Dr. Murphy, Sanderson's primary treating physician, also noted the existence of between eight and thirteen "trigger" points during Sanderson's March 2000 through August 2000 medical visits.[4] *Id.* The denial letter does not

---

[4] The American College of Rheumatology has designated 18 sites on the body as possible tender points. *See Questions and Answers About Fibromyalgia*, at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm (June 2004). A physician will

provide any contradictory diagnosis. Indeed, Continental agrees that it does not dispute "Ms. Sanderson's diagnoses, need for ongoing medical treatment, or symptoms that she has experienced . . ." (D.I. 87 Ex. 36, at A217.) Nevertheless, Continental reaches the identical conclusion it reached in its January 19, 2001 denial letter, namely, ". . . we do not see evidence of a functional loss that would have prevented Ms. Sanderson from continuously performing the substantial and material duties of her regular occupation beyond August 31, 2000." (*Id.* at A218; *see* D.I. 87 Ex. 30, at A208 ("[T]he medical evidence [based on the peer review findings by Dr. Truchelut] does not support a functional impairment to preclude Ms. Sanderson from performing her occupation as a Health and Safety Environmental Engineer and Plan Facilitator.")) The court, therefore, concludes that Continental's conclusion must fail because it is arbitrary and capricious. *See Sanderson I*, 279 F. Supp. 2d at 476-77 (determining that various treating physicians' reports supported the finding that Sanderson's ailments made her unable to perform her job duties, and that Continental's decision was arbitrary and capricious).

Furthermore, although Continental concluded that Dr. Truchelut's review resulted in a finding that Ms. Sanderson was not disabled during the Occupation Period, his review did not address Sanderson's fibromyalgia and was "confined to her carpal tunnel syndrom and rheumatoid arthritis." *Sanderson I*, 279 F. Supp. 2d at 474. Upon remand, if Continental still intended to rely on Dr. Truchelut's assessment, it could have asked Dr. Truchelut to review Sanderson's medical records again and consider the effect that a diagnosis of fibromyalgia would have on her ability to perform her job duties. Continental, however, chose not to have Dr. Truchelut reassess Sanderson's disability, or examine Sanderson, but continued to rely on his conclusions. Continental, therefore,

---

diagnose a patient with fibromyalgia when the patient has 11 or more tender points. *Id.*

again reached its conclusion by ignoring the findings of Sanderson's physicians that supported a diagnosis of fibromyalgia. *Id.* at 476. Accordingly, Continental's repetitious failure, against the court's explicit instructions, to reconcile evidence tending to support an award of benefits is arbitrary and capricious.[5]

### B.     The Appropriate Remedy

After a court determines that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits. *Cook v. Liberty Life Assurance Co.*, 320 F.3d 11, 24 (1st Cir. 2003) (citing *Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331, 1340 (8th Cir. 1995)). To allow Continental another opportunity to review the case after it has had nearly five years of administrative proceedings, including an administrative appeal and court ordered remand, "would contravene the underlying policies of ERISA and invite similar dilatory behavior." *Carney v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund*, No. Civ.A. 04-1988, 2003 WL 21129851, at *5 (3d Cir. May 16, 2003) (unpublished); *see Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 648 (2d Cir. 2002); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288-1289 (10th Cir. 2002). Continental's recalcitrant

---

[5] The court also notes that Sanderson's disability is supported by the Social Security Administration (the "SSA"), who notified her on January 17, 2001 that she had been approved for Social Security Disability Income, retroactive to September 2000. "While the Social Security Administration's decision is not dispositive, it may be a factor considered by the court in reviewing the administrator's decision under the arbitrary and capricious standard." *Blakely v. WSMW Indus., Inc.*, No. Civ. 02-1631-SLR, 2004 WL 1739717, at *10 (D. Del. July 20, 2004) (citing *Edgerton v. CNA Ins. Co.*, 215 F. Supp. 2d 541, 549 (E.D. Pa. 2002). The court finds that the Social Security Administration's decision is a relevant consideration because Continental was aware of the decision and possessed the decision before issuing its January 19, 2001 denial letter. That being said, the SSA's decision further supports the conclusion that Continental was arbitrary and capricious.

conduct is compounded by the fact that, although the court set forth explicit parameters regarding how it should proceed, it failed to conduct further meaningful review of Sanderson's case. The court, therefore, believes that, under the circumstances, remanding the case to Continental for further administrative review would be futile. Thus, the court must determine whether it should award Sanderson a retroactive reinstatement of benefits.

Continental contends that the court cannot award Sanderson Occupation Period benefits, in light of the court's statement in *Sanderson I*, that "it is not in a position . . . to determine whether Sanderson is, in fact, disabled. *Sanderson I*, 279 F. Supp. 2d at 478. The court disagrees and, because of Continental's recalcitrance, has elected to look at the administrative record anew and has decided that it is in a position to determine that Sanderson is disabled. The record evidence from Sanderson's treating physicians supports her entitlement to benefits. In other words, Sanderson's physicians' reports, letters, and notes, documenting her complaints of pain, as well as their medical tests and opinions, contain objective medical evidence of fibromyalgia, leading the court to conclude that she is disabled. For example, on October 6, 2000, Dr. Newman wrote a letter to Dr. Charles A. Esham, M.D. ("Dr. Esham"),[6] which states "I think a reasonable second diagnosis is fibromyalgia. She certainly seems to have this syndrome on the basis of sleep disturbance, chronic fatigue, bruxism, temporomandibular joint dysfunction, irritable bowel syndrome and symmetric tender points." (D.I. 87, Ex. 22, at 2.) Dr. Newman then concluded "I think she [Sanderson] has a severe disability due to these . . . problems." (*Id.*)

Dr. Matsumoto's report, dated October 17, 200, also notes Sanderson's complaints of pain, stating that "[s]he is markedly disabled by her pain," and concludes that "she fits into the category

---

[6] Dr. Esham is also one of Sanderson's treating physicians.

11

of a patient who has a fibromyalgia type of a presentation." (*Id.* Ex. 23, at 2-3.) Lastly, and most tellingly, Dr. Murphy, who has treated Sanderson since October 1999, wrote a letter to Rica Hall, a Continental Disability Specialist, describing the "diseases which totally disable her [Sanderson] – rheumatoid arthritis and fibromyalgia." (*Id.* Ex. 26, at 2.) According to Dr. Murphy, Sanderson "is disabled by the extreme, pervasive and chronic pain she experiences due to rheumatoid arthritis and fibromyalgia." (*Id.*) Dr. Murphy also notes that "pain is the most debilitating of [her] symptoms," and that the "pain is so severe that she has great difficulty performing basic life activities, such as walking, standing, dressing or eating." (*Id.* at 3.) Finally, Dr. Murphy states that both Dr. Newman and Dr. Matsumoto, experts in rheumatology and fibromyalgia, "have determined that Ms. Sanderson is physically disabled from working due to fibromyalgia (and rheumatoid arthritis)," consistent with her own diagnoses and opinion regarding Sanderson's ability to work. (*Id.*) Thus, the record evidence shows that, due to severe and chronic pain resulting from fibromyalgia, Sanderson is unable to fulfill the substantial and material duties of her occupation.[7] Under the circumstances, Sanderson's fibromyalgia renders her disabled within the guidelines of Continental's policy. Accordingly, the court will award Sanderson a retroactive reinstatement of benefits for the entire Occupation Period.[8]

---

[7] The court would like to express its concern with Continental's reliance on Dr. Truchelut's paper review. As previously discussed here, and in *Sanderson I*, fibromyalgia is not diagnosed by an objective laboratory marker. Rather, it is diagnosed clinically through the tender point test. Thus, the court finds it disconcerting that Dr. Truchelut never examined Sanderson but, instead, relied on a paper record, which is poor evidence of Sanderson's weakness, fatigue and pain, her primary complaints. *Wuollet v. Short-Term Disability Plan of RSKCo*, 360 F. Supp. 2d 994, 1009 (D. Minn. 2005).

[8] Continental has not made a disability determination for the Any Occupation Period. Nor has Sanderson applied for "Any Occupation" benefits. "[A]bsent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is

Dated: September 26, 2005

_____
UNITED STATES DISTRICT JUDGE

---

eligible for benefits under an ERISA plan." *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 117 (2d Cir. 2002). Thus, whether Sanderson is eligible for "Any Occupation Period" benefits is not properly before the court. Accordingly, the court will not determine whether Sanderson is entitled to benefits for the Any Occupation Period, and will grant Continental's motion for summary judgment on this limited issue. However, Sanderson may file a claim for Any Occupation Period benefits with Continental. Should she receive an adverse decision after exhausting administrative remedies, she may seek redress in federal court.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KIMBERLY N. SANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-606 GMS |
| | ) | |
| CONTINENTAL CASUALTY CORPORATION, | ) | |
| and RHODIA INC. AND NAMED AFFILIATES | ) | |
| GROUP LONG TERM DISABILITY PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

SEP 2 6 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The Plaintiff's Motion for Summary Judgment (D.I. 85) is GRANTED in part and DENIED in part.

2. The Defendant's Cross-Motion for Summary Judgment (D.I. 91) is DENIED.

Dated: September __, 2005

UNITED STATES DISTRICT JUDGE